IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **MARY CRAIG** | * | **CIVIL ACTION NO. 3:10-00227** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **PFIZER, INC., WYETH L.L.C., SCHWARZ PHARMA, INC. & TEVA PHARMACEUTICALS USA, INC.** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to dismiss filed by defendants Wyeth L.L.C. ("Wyeth"), Pfizer, Inc. ("Pfizer"), and Schwarz Pharma, Inc. ("Schwarz"). Doc. # 4. For reasons stated below, it is recommended that the motion be **GRANTED.**

BACKGROUND

Metoclopramide is a prescription drug approved by the U.S. Food and Drug Administration to treat, among other conditions, gastroesophageal reflux disease. Metoclopramide is available in both brand and generic formulation. The brand formulation is known as Reglan.

Plaintiff Mary Craig ("Craig") filed this action on February 11, 2010. Doc. # 1. The complaint alleges that Craig ingested metoclopramide from early 2002 until December 2007. *Id.* at ¶ 3.02. As a result, Craig alleges that she developed a neurological condition known as tardive dyskinesia and suffered other "permanent and disabling injuries." *Id.* at ¶ 3.10.

Craig alleges that Wyeth manufactured and marketed name brand metoclopramide at all relevant times. *Id.* at ¶ 3.26; Doc. # 15 at 7. Craig further alleges that Schwarz "purchased from

Wyeth the rights and *liabilities* associated with Reglan/metoclopramide" which "obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/metoclopramide," Doc. # 1 at ¶ 3.30 (emphasis in original), and that Pfizer, as the "successor in interest to Wyeth," is "legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made by Wyeth concerning the safety and adequacy of Reglan/metoclopramide, and all liabilities stemming therefrom." *Id.* at ¶ 3.33. However, Craig specifically alleges that the "Reglan/metoclopramide ingested by Mrs. Craig was manufactured by Teva Pharmaceuticals USA, Inc." *Id.* at ¶ 3.06. Unlike the other defendants, Teva is a generic manufacturer of metoclopramide. *Id.* at ¶¶ 3.34-3.35, 3.50.

The complaint asserts a claim under the Louisiana Products Liability Act ("LPLA") against Teva. *Id.* at ¶¶ 4.01-4.06. No such claim is asserted against Wyeth, Schwarz, or Pfizer. Instead, Craig asserts that Wyeth, Schwarz, and Pfizer are liable under the Louisiana Unfair Trade Practice and Consumer Protection Law ("LUTPA") (*id.* at ¶¶ 6.12-6.16); for breach of express and implied warranties (*id.* at ¶¶ 7.17-7.18); and for misrepresentation and fraud (*id.* at ¶¶ 7.19-7.24).[1] Craig essentially seeks to hold Wyeth, Schwarz, and Pfizer liable for the injuries that she sustained from ingesting generic metoclopramide manufactured by Teva because Teva relied on these companies' allegedly defective warnings for name brand metoclopramide in marketing the generic formulation. *Id.* at ¶¶ 3.36- 3.49.

Wyeth, Schwarz, and Pfizer seek to dismiss Craig's claims on two grounds: (1) Craig

---

[1] The complaint specifically names only Wyeth and Schwarz in alleging its claims under the LUPTA, for breach of express and implied warranties, and for misrepresentation and fraud. However, the complaint also seeks to hold Pfizer liable under each of these theories in light of the complaint's allegation that Pfizer is the successor in interest to Wyeth and is thus liable for all of Wyeth's acts concerning the manufacture and marketing of Reglan. Doc. # 1 at ¶ 3.33; *see* summary of plaintiff's complaint, *supra*.

2

does not state a claim against them under the LPLA and thus under any theory of liability in light of the LPLA's exclusive remedy provision; and (2) as brand name manufacturers of metaclopramide, Wyeth and Schwarz did not owe a legal duty to Craig, who consumed only generic metoclopramide.  Doc. # 4 at 1-3.  The matter is now before the court.

**LAW AND ANALYSIS**

**I. 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where the claimant fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss, a complaint "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002).  However, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Finally, when a plaintiff pleads factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.*

**II. Analysis**

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In their memoranda, the instant parties both address plaintiffs' claims in terms of Louisiana law, and thus implicitly agree that the

substantive law of Louisiana applies to the instant dispute. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. 1997) (applying Louisiana law because no party disputed that Louisiana law governed);[2] *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 906 (E.D. La. 2007) (applying substantive law of plaintiff's home state in defective drug product case).

**A. Louisiana Products Liability Act**

Just six months ago, in *Morris v. Wyeth*, No. 09-0854, 2009 WL 4064103 (W.D. La. Nov. 23, 2009), this court addressed a case that is almost identical to the case at hand. The plaintiff in *Morris* stipulated that she ingested only generic metoclopramide, but nevertheless sought to hold brand name manufacturers of metoclopramide liable under the same theories that Craig now seeks to hold Wyeth, Schwarz, and Pfizer liable - violation of the LUPTA, breach of warranty, and fraud and misrepresentation. *Id.* at * 1.

The court in *Morris* granted summary judgment in favor of the brand name manufacturers. The court noted that the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.51. The court found that the plaintiff's claims against the brand name manufacturers fell within the purview of the LPLA, which applies whenever a plaintiff seeks to hold a manufacturer liable for "damages caused by their products and the warnings associated with those products." *Morris*, 2009 WL 4064103 at *4 (citing *Jefferson v. Lead Indus. Assoc., Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997). In light of a plaintiff's obligation under the LPLA to prove that the defendant's

---

[2] In *Jefferson*, the Fifth Circuit's decision incorporated the underlying district court opinion, 930 F. Supp. 241 (E.D. La. May 31, 1996) (Vance, J.).

4

product proximately caused the harm, LA. REV. STAT. ANN. § 9:2800.54, the court ruled that the plaintiff did not state a cause of action against the brand name manufacturers under the LPLA because the plaintiff conceded that she "did not ingest products manufactured and/or sold by [the brand name manufacturers]." *Morris*, 2009 WL 4064103, at *4.

Like the plaintiff in *Morris*, Craig seeks to hold brand name manufacturers of metaclopramide liable for issuing allegedly defective warnings that were ultimately relied upon by the company that manufactured the generic formulation of metaclopramide that Craig actually consumed. Thus, for the reasons enunciated in *Morris*, Craig's claim falls within the purview of the LPLA but fails to state a cause of action under the LPLA against Wyeth, Schwarz, or Pfizer. Accordingly, Craig fails to state a cause of action under any theory of liability against Wyeth, Schwarz, or Pfizer because of the LPLA's exclusive remedy provision.

### B. Duty Owed by Brand Name Drug Manufacturers

Assuming *arguendo* that Craig's claims against Wyeth, Schwarz, and Pfizer were not subject to the LPLA, Craig would still have to prove, as she acknowledges throughout her memorandum in opposition to the motion to dismiss, that these defendants owed her a legal duty or its statutory equivalent in order to prevail on any of her claims against them. However, Louisiana state cases and cases interpreting Louisiana law clearly indicate that a brand name manufacturer of a drug does not owe a duty to a consumer of the generic formulation of the drug. Accordingly, Craig's claims against Wyeth, Schwarz, and Pfizer should be dismissed for this additional reason.

*Stanley v. Wyeth*, 991 So. 2d 31 (La. Ct. App. 2008), enunciated the principle that a brand name manufacturer does not owe a duty to a consumer of the generic formulation of the drug. In that case, Mrs. Stanley suffered injuries upon ingesting a generic formulation of amiodarone.

5

Her family sued Wyeth, the manufacturer of name brand amiodarone, essentially alleging that Mrs. Stanley was injured by Wyeth's misrepresentations of its product to the medical community. *Id.* at 33. The court held that "a name brand drug manufacturer owes no legal duty to the consumer of a generic equivalent of its drug." *Id.* at 34. The court reasoned that "to impose a duty upon a manufacturer for damages caused by the generic bioequivalent would stretch the concept of foreseeability too far because a manufacturer cannot reasonably expect that consumers will rely on information they provide when actually ingesting another company's drug." *Id.* (referencing *Foster v. American Home Products Corp.*, 29 F.3d 165, 171 (4th Cir. 1994)). Accordingly, the court concluded that Mrs. Stanley's family could not recover against Wyeth under any theory of liability. *Id.*

*Stanley's* holding is consistent with a long line of cases which establish that Louisiana law does not impose a duty on a manufacturer to warn of the dangers of another company's product. *See, e.g., Tarver v. Wyeth*, No. 3-04-2036, 2005 U.S. Dist. LEXIS 42228, at *6 (W.D. La. Apr. 28, 2005) (dismissing plaintiff's claims against a brand name manufacturer under facts identical to the case at hand); *Roberts v. Bioplasty, Inc.*, No. 93-2967, 2000 U.S. Dist. LEXIS 22666 (E.D. La. Feb 11, 2000) (finding that a manufacturer has no duty to warn about the hazards of a product that it did not manufacture or sell); *Fricke v. Owens-Corning Fiberglass Corp.*, 618 So. 2d 473, 475 (La. Ct. App. 1993) ("We are not prepared to hold a manufacturer responsible for alleged inadequate warnings about a product it neither manufactured nor sold.").

Against the weight of binding authority, Craig argues, on several grounds, that Wyeth, Schwarz and Pfizer owed a duty to her as a matter of state law even though she did not consume their product. However, as previously mentioned, Louisiana law explicitly dictates that Wyeth, Schwarz, and Pfizer, as brand name manufacturers of metoclopramide, did not owe a duty to

Craig, who ingested only generic metoclopramide. *See Stanley*, 991 So. 2d at 34; *Tarver*, 2005 U.S. Dist. LEXIS 42228, at *6. For this reason, all of Craig's arguments which contend that Wyeth, Schwarz, and Pfizer owed a duty to her as a matter of state law are unavailing.[3]

---

[3] Craig first argues that the brand name defendants owed a duty to her on the basis of *Conte v. Wyeth*, 168 Cal. App. 4th 89 (Cal. Ct. App. 2008). Doc. # 15 at 24-25. In *Conte*, a case with nearly identical facts to those in the case at hand, the court analyzed principles of foreseeability in California and concluded that Wyeth owed a duty to consumers of generic metoclopramide who are injured "as a result of prescriptions written in reliance on Wyeth's product information for Reglan." *Conte*, 168 Cal. App. 4th at 315. Needless to say, *Conte* does not control the outcome of this case because it was issued by a California state court that considered only California law.

Craig next contends that the similarity between California and Louisiana law dictates that this court reach the same outcome as the California court in *Conte*. Doc. # 15 at 26-27. However, the Louisiana courts have already spoken on this issue, and have determined that under Louisiana law, manufacturers of brand name drugs do not owe a duty to consumers of the generic formulation of the drug. *See Stanley*, 991 So. 2d at 34; *Tarver*, 2005 U.S. Dist. LEXIS 42228, at *6.

Finally, Craig contends that Wyeth, Schwarz, and Pfizer, as the "designers" of name brand metoclopramide, owed a duty to her. Craig cites *Alm v. Aluminum Co. Of America*, 717 S.W.2d 588 (Tex. 1986) for this principle. In that case, the Texas Supreme Court stated, "A manufacturer, as well as all suppliers of a product, also has a duty to inform users of hazards associated with the use of its products. There is no reason to distinguish a designer, who has intimate knowledge of a designed product, from a retailer, wholesaler or manufacturer." *Id.* at 591 (citing the RESTATEMENT (SECOND) OF TORTS § 388 (1965)).

Craig's analogy of Wyeth, Schwarz, and Pfizer to the designers of name brand metoclopramide is unavailing. In *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608 (Tex. 1996), the Texas Supreme Court subsequently determined that its decision in *Alm* did not extend liability to designers or manufacturers that did not design, manufacture, or sell the specific product that caused the plaintiff's injuries. *Id*. at 615-16 (finding that Firestone, a designer and manufacturer of tires, could not be liable to a plaintiff whose injuries were caused by the tires of another manufacturer that copied and modified Firestone tires). Accordingly, the "designer" theory of liability under which Craig seeks to attach a duty to Wyeth, Schwarz, and Pfizer has been subsequently clarified so as not to attach duty to them because none of these manufacturers designed, manufactured or sold the specific generic metoclopramide that ultimately caused Craig's injuries. Furthermore, Texas courts have repeatedly rejected claims identical to Craig's claims under Texas law. *See, e.g.*, *Hardy v. Wyeth*, No. 9:09-CV-152, 2010 WL 1222183, at *1 (dismissing claims against brand defendants where plaintiff used the generic version); *Burke v. Wyeth, Inc.*, No. G-09-00082, 2009 WL 3698480, at *2 (S.D. Tex. Oct. 29, 2009) (same); *Cousins v. Wyeth Pharm., Inc.*, No. 3:08-CV-0310-N, 2009 WL 648703, at *2 (N.D. Tex. Mar. 10, 2009) (same).

7

Wyeth, Schwarz, and Pfizer likewise did not owe a duty to Craig as a matter of federal law. "No federal statute or FDA regulation imposes a duty or suggests that a name brand manufacturer is responsible for the labeling of competing generic products." *Dietrich v. Wyeth*, No. 50-2009-CA-021586, 2009 WL 4924722 (Fla. Cir. Ct. Dec. 21, 2009). Indeed, the FDA regulations that Craig cites in support of her argument that Wyeth, Schwarz, and Pfizer owed her a duty under federal law merely confirm that brand name manufacturers are responsible for the labeling on their drugs, and nothing more. 21 C.F.R. §§ 314.70(a)(1), 314.70(b)(2)(v)(A), 314.97.

In light of this court's finding that Wyeth, Schwarz, and Pfizer did not owe Craig a legal duty, this court need not reach Craig's arguments that the defendants' breach of their alleged duty foreseeably caused her injuries. Nevertheless, the undersigned observes that the Louisiana appellate court in *Stanley* held that "a name brand drug manufacturer owes no legal duty to the consumer of a generic equivalent of its drug" because to impose such a duty "would stretch the concept of foreseeability too far because a manufacturer cannot reasonably expect that consumers will rely on information they provide when actually ingesting another company's drug." *Stanley*, 991 So. 2d at 34.

## CONCLUSION

In sum, plaintiff's complaint fails to state a claim upon which relief can be granted against the defendants Pfizer, Inc., Wyeth L.L.C., and Schwarz Pharma, Inc. Accordingly,

It is recommended that the motion to dismiss filed by defendants Pfizer, Inc., Wyeth L.L.C., and Schwarz Pharma, Inc. (doc. # 4) be **GRANTED**, dismissing plaintiff's claims against these defendants in their entirety.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties

8

have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 26th day of May, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE